# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a)  PLAINTIFFS

## DEFENDANTS

**(b)**  County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)**  Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II.  BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
Plaintiff

☐ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III.  CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                     *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated New Drug Application<br>☐ 840 Trademark | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act<br>☐ 896 Arbitration<br>☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | **SOCIAL SECURITY** | |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act | ☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br><br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | |
| | | | **IMMIGRATION** | | |
| | | | ☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | | |

## V.  ORIGIN *(Place an "X" in One Box Only)*

☐ 1   Original Proceeding
☐ 2   Removed from State Court
☐ 3   Remanded from Appellate Court
☐ 4   Reinstated or Reopened
☐ 5   Transferred from Another District *(specify)*
☐ 6   Multidistrict Litigation - Transfer
☐ 8   Multidistrict Litigation - Direct File

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII.  REQUESTED IN COMPLAINT:

☐  CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:      ☐ Yes    ☐ No

## VIII.  RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____                     DOCKET NUMBER _____

DATE

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

AMANDA HANCOCK,

        Plaintiff,

v

    Case No. 18-
    Hon.

MICHIGAN STATE UNIVERSITY;
THE BOARD OF TRUSTEES OF
MICHIGAN STATE UNIVERSITY;
KATHIE KLAGES (individual capacity);
WILLIAM D. STRAMPEL (individual
capacity); JEFFREY R. KOVAN (individual
and official capacity); GARY STOLLAK
(individual capacity); DOUGLAS DIETZEL
(individual and official capacity); BROOKE
LEMMEN, D.O., (individual capacity);
DESTINY TEACHNOR-HAUK (individual
capacity); and KRISTINE MOORE
(individual capacity);

        Defendants.

_____/

Robert M. Giroux (P47966)
Matthew D. Klakulak (P60220)
***Giroux Amburn PC***
Attorneys for Plaintiff
28588 Northwestern Highway, Suite 100
Southfield, Michigan 48034
(248) 531-8665
r.giroux@girouxamburn.com
m.klakulak@girouxamburn.com

_____/

## COMPLAINT AND JURY DEMAND

    Plaintiff Amanda Hancock, by and through her attorneys, Giroux Amburn, PC, states the

following for her Complaint against Defendants Michigan State University ("MSU"), the Board

of Trustees of Michigan State University, Kathie Klages, William D. Strampel, Jeffrey R.

Kovan, D.O. Douglas Dietzel, D.O., Brooke Lemmen, D.O., Gary E. Stollak, Kristine Moore,

Destiny Teachnor-Hauk (collectively "MSU Defendants") and Lawrence Gerard Nassar:

1

## INTRODUCTORY STATEMENTS

1.      This is a civil action for declaratory, injunctive, equitable, and monetary relief for injuries sustained by Plaintiff as a result of acts and omissions of Defendants MSU, the Board of Trustees of Michigan State University and their respective employees, agents, and/or representatives, relating to sexual assault, battery, molestation, harassment, and discrimination by Lawrence Gerard Nassar ("Nassar") against Plaintiff.

2.      At all times pertinent hereto, Nassar was retained and employed by Defendant MSU and USA Gymnastics, Inc. ("USAG") to provide medical care, treatment, and advice to Michigan State University athletes and members of the general public. Nassar regularly provided such medical care, treatment, and advice at Defendant MSU's training department and/or MSU Sports Medicine Clinic

3.      Nassar came highly recommended to Plaintiff as a renowned orthopedic sports medicine physician, purportedly well-respected in the sports medicine community, specifically in the gymnastics community as the Team Physician for the United States Gymnastics team.

4.      Upon information and belief, Nassar used his position of trust and confidence to regularly and systematically sexually assault, batter, molest, and harass female patients over the entire course of his career in his capacity as an employee, agent, and/or representative of Defendant MSU, USAG and other entities for his own sexual gratification.

5.      Despite being informed of Nassar's sexual assault, battery, molestation, and harassment, Defendant MSU failed to take appropriate action to prevent Nassar from sexually molesting, abusing, and harassing his patients over the course of his career in his capacity as an employee, agent, and/or representative of Defendant MSU.

## JURISDICTION

6.      This action is brought pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.*, as more fully set forth herein.

7.      This action also seeks to redress the deprivation of Plaintiff's rights secured by the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983.

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that the controversy arises under the Constitution, laws, and treaties of the United States.

9.      Subject matter jurisdiction is also founded upon 28 U.S.C. § 1343 which grants district courts original jurisdiction over any civil action authorized by law to be commenced by any person to redress the deprivation, under color of any state law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; or any action to recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights.

10.     Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a) to hear and decide claims arising under state law that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

11.     Plaintiff's claims are cognizable under the United States Constitution, 42 U.S.C. § 1983; 20 U.S.C. § 1681, et seq., and under Michigan law.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the events giving rise to Plaintiff's claims arose in this judicial district, in Ingham County, Michigan.

13.     Plaintiff has filed the appropriate Notice of Intent to File Claim with the Michigan Court of Claims pursuant to MCL 600.6431. (Exh. 1).

**PARTIES**

14.     Plaintiff Amanda Hancock is a resident of the Eaton County, State of Michigan.

15.     Defendant MSU is and was, at all times pertinent hereto, a state-owned and operated public university and institution of higher education organized and existing under laws of the State of Michigan.

16.     Michigan State University receives federal financial assistance and is therefore subject to Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681 *et seq.*

17.     Defendant The Board of Trustees of Michigan State University is the governing body for Michigan State University.

18.     Lawrence Gerard Nassar was at all times pertinent to this action a Doctor of Osteopathic Medicine, a resident of Ingham County, Michigan, and an employee, agent, and/or representative of Defendant MSU. Amanda Hancock has already obtained a February 14, 2018 Default Judgment of $1.5 million against Lawrence Gerard Nassar from Ingham County Circuit Court based on the admitted allegations of her September 25, 2017 Complaint. (Exh. 2, Default Judgment; Exh. 3, Complaint).

19.     Lou Anna K. Simon is the immediate past President of Defendant MSU, serving from approximately January 2005 - 2018.

20.     M. Peter McPherson is a past President of Defendant MSU and served as President from approximately 1993 - 2004.

21.     Defendant William D. Strampel, D.O. (hereinafter "Defendant Strampel") was the Dean of the College of Osteopathic Medicine at Defendant MSU, serving as Dean from

approximately 2002-2017.

22.     Defendant Jeffrey R. Kovan, D.O. (hereinafter "Defendant Kovan"), is or was the Director of Division of Sports Medicine at Defendant MSU.

23.     Defendant Douglas Dietzel, D.O. (hereinafter "Defendant Dietzel"), is the Clinical Director of MSU Sports Medicine and Team Orthopedic Surgeon for MSU Department of Intercollegiate Athletics serving as Clinical Director of MSU Sports Medicine since approximately 2004.

24.     Defendant Brooke Lemmen, D.O. (hereinafter "Defendant Lemmen"), is or was a practicing physician with MSU Sports Medicine from approximately 2010 to 2017.

25.     Defendant Kathie Klages (hereinafter "Defendant Klages") was the head coach of the Michigan State University Gymnastics Program until her suspension and resignation in early 2017; she also conducted gymnastics classes and programs for children and young adults not on the varsity gymnastics team.

26.     Defendant Destiny Teachnor-Hauk (hereinafter "Defendant TeachnorHauk") is or was an athletic trainer for Defendant MSU for various sports including, but not limited to, softball, track and field, gymnastics, rowing, and volleyball.

27.     Defendant Teachnor-Hauk regularly referred MSU student athletes to Nassar for medical treatment.

28.     Defendant Gary E. Stollak (hereinafter "Defendant Stollak") was a professor in the clinical program within the Michigan State University Department of Psychology.

29.     Defendant Kristine M. Moore (hereinafter "Defendant Moore") served as the Assistant Director for Institutional Equity Office for Inclusion and Intercultural Initiatives in 2014. Following the incident that is the subject of this civil action, Defendant Moore began

serving as, and remains at this time, Assistant General Counsel at Michigan State University.

## GENERAL ALLEGATIONS

30.     Plaintiff incorporates by reference the allegations contained in the various complaints filed in the respective member cases of the consolidated action of which this case should likewise be a part, the first-filed of which being *Denhollander v. Mich. State Univ.*, Case No. 17-00029 (W.D. Mich.).

31.     At all times pertinent hereto, Lawrence Gerard Nassar maintained an office at Defendant MSU in East Lansing, Michigan.

32.     At all times pertinent hereto, including the years 1996 to 2016, Nassar was an employee, representative, and/or agent of Defendant MSU acting under their control and supervision.

33.     At all times pertinent hereto, including the years 1996 to 2016, Nassar was acting in the scope of his employment or agency with Defendant MSU.

34.     At all times pertinent hereto, the MSU Defendants and Nassar were acting under color of law, including acting under color of statutes, ordinances, regulations, policies, customs, and usages of the State of Michigan and/or Defendant MSU.

35.     Nassar graduated with a Doctor of Osteopathic Medicine degree from Defendant MSU in approximately 1993.

36.     Nassar was employed by, and/or an agent of, Defendant MSU from approximately 1996 to 2016, serving in various positions, including, but not limited to: (a) Associate Professor of Defendant MSU's Division of Sports Medicine, Department of Radiology, College of Osteopathic Medicine; (b) Team Physician of Defendant MSU's Men's and Women's Gymnastics Teams; (c) Team Physician of Defendant MSU's Men's and

Women's Track and Field Teams; (d) Team Physician of Defendant MSU's Men's and Women's Crew Teams; (e) Team Physician of Defendant MSU's Intercollegiate Athletics; (f) Medical Consultant with Defendant MSU's Wharton Center for the Performing Arts; and (g) Advisor for Student Osteopathic Association of Sports Medicine.

37.     As part of Nassar's employment and contractual duties with MSU, he was responsible for spending between 50% to 70% of his time engaged in "Outreach" and/or "Public Services."

38.     As a physician of osteopathic medicine, Nassar's medical care and treatment should have consisted largely of osteopathic adjustments and kinesiology treatment to patients, including students and student athletes of Defendant MSU.

39.     Nassar is not and has never been a medical doctor of obstetrics or gynecology.

40.     While employed by Defendant MSU, Nassar practiced medicine at Defendant MSU's Sports Medicine Clinic, a facility at MSU.

41.     While employed by Defendant MSU, Nassar sexually assaulted, abused, and molested numerous female patients by engaging in nonconsensual sexual assault, battery, molestation, and harassment, including, but not limited to, digital vaginal and anal penetration without the use of gloves or lubricant.

42.     The use of gloves when exposed to potentially infectious material, including vaginal secretion, is mandated by the Michigan's Administrative Code R.325.70001 et seq.

43.     As early as 1997 and/or 1998, employees, representatives, and agents of Defendant MSU were made aware of Nassar's conduct, yet failed to appropriately respond to allegations, resulting in the sexual assault, battery, molestation, and harassment of Plaintiff and other female patients through approximately 2016.

44.     Upon information and belief, Defendant MSU and Kathie Klages were expressly notified by a minor female athlete, Larissa Boyce, in 1997 and/or 1998, while under the instruction of Kathie Klages and MSU Youth Gymnastics, that Nassar sexual assaulted, battered, molested, and harassed Larissa Boyce on multiple occasions. (Second Amended Complaint, ¶ 82, *Denhollander v. Mich. State Univ.*, Case No. 17-00029 (W.D. Mich.), RE63, PgID2924).

45.     Upon information and belief, after receiving Larissa Boyce's complaint, Katie Klages told Larissa Boyce that she must be "misunderstanding" or "reading into" what Nassar was doing. Kathie Klages convinced Larissa Boyce not to file a formal complaint by explaining that it would have serious consequences for Larissa Boyce and Nassar. *Id.* at ¶ 83

46.     As a result of MSU gymnastics head coach Kathie Klages being informed by Larissa Boyce of Nassar's conduct, Jane B8 Doe was asked by Klages if Nassar had performed the "procedure" involving digital vaginal and anal penetration on Jane B8 Doe, and Jane B8 Doe responded in the affirmative. Klages told Jane B8 Doe that there is no reason to bring up Nassar's conduct. *Id.* at ¶ 84.

47.     Despite her complaints to Defendant MSU employees, agents, and/or representatives, including Kathie Klages, Larissa Boyce's concerns and allegations went unaddressed in violation of reporting policies and procedures and Title IX and in a manner that was reckless, deliberately indifferent, and grossly negligent.

48.     In or around 1999 the MSU Defendants were also put on notice of Nassar's conduct by a MSU student and track and cross-country athlete, Christie Achenbach, after she complained to MSU employees, including trainers and her head coach, Kelli Bert, that Nassar touched her vaginal area although she was seeking treatment for an injured hamstring.

49.     Despite her complaints to Defendant MSU's employees, agents, and/or

representatives, including trainers and head coaches, Christie Achenbach's concerns and allegations went unaddressed in violation of reporting policies and procedures and Title IX and in a manner that was reckless, deliberately indifferent, and grossly negligent.

50.     Upon information and belief, Defendant MSU was notified in 2000 that Nassar committed acts of sexual assault, battery, molestation, and harassment when a student athlete, Tiffany Thomas Lopez, reported to MSU employees, agents, and/or representatives, including the highest-ranking employees within MSU's Training Staff, that Nassar touched her vaginal area on multiple occasions and inserted his ungloved hand into her vagina, although she was seeking treatment for back pain. (Complaint, ¶ 26, *Lopez v. Nassar*, Case No. BC644417 (Cal Sup. Ct. Dec. 21, 2016)).

51.     Upon information and belief, an employee, agent, and/or representative of Defendant MSU, who was one of three individuals that supervised the training department, told Tiffany Thomas Lopez that what happened to her was not sexual abuse, that Nassar was a world-renowned doctor, that she was not to discuss what happened, and that she was to continue seeing Nassar for purported treatment. *Id.*

52.     One of the trainers that Ms. Lopez reported to was Lianna Hadden, who is still presently employed by MSU as an athletic trainer with the volleyball team.

53.     After reporting the assault to Ms. Hadden, Ms. Lopez also reported the assault to Destiny Teachnor-Hauk.

54.     Ms. Lopez told Teachnor-Hauk that she was "extremely uncomfortable," but Teachnor-Hauk told Ms. Lopez that Nassar was engaged in actual medical treatment.

55.     Teachnor-Hauk further dissuaded Ms. Lopez from reporting Nassar's conduct further by telling Ms. Lopez that if Lopez pursued the matter further that it would cast a burden

over her family and cause Ms. Lopez a lot of heartache and trauma.

56.     Teachnor-Hauk also defended Nassar by stating to Ms. Lopez by asking why she would want to drag Nassar through an allegation of sexual assault.

57.     Despite her complaints to Defendant MSU employees, agents, and/or representatives, including the highest-ranking employees within MSU's Training Staff, Tiffany Thomas Lopez's concerns and allegations went unaddressed in violation of reporting policies and procedures and Title IX and in a manner that was reckless, deliberately indifferent, and grossly negligent.

58.     Upon information and belief, Defendant MSU was notified in approximately 2001 or 2002 that Nassar committed acts of sexual assault, battery, molestation, and harassment when Jennifer Rood Bedford, an MSU student athlete on the women's volleyball team, was sexually assaulted and abused during "treatment" by Nassar and reported Nassar's conduct to Defendant MSU's employees, including MSU athletic trainer Lianna Hadden.[1]

59.     According to Ms. Bedford, Nassar was known among the women's volleyball team as the "crotch doc" because of his "unconventional methods" of treating sports injuries with vaginal penetrations. *Id.*

60.     Ms. Hadden dissuaded Ms. Bedford from filing a formal complaint or report against Nassar because it would "involve an investigation, making an accusation against Nassar, and that stating that I felt that he did something unprofessional or criminally wrong." *Id.*

61.     Upon information and belief, Defendant MSU was notified in approximately 2004 that Nassar committed acts of sexual assault, battery, molestation, and harassment when Kyle

---

[1] See Nassar Victim: Jennifer Rood Bedford Statement, Jan. 16, 2018, available at https://www.clickondetroit.com/video/nassar-victim-jennifer-rood-bedford-statement.   Last accessed January 16, 2018.

Stephens—then 11 or 12 years old—was sexually assaulted and abused during "treatment" by Nassar and reported Nassar's conduct to Defendant MSU's employees, including Defendant Gary E. Stollak.

62.     Defendant Stollak did not report the abuse to law enforcement or to child protective services.

63.     Instead, Defendant Stollak suggested that Ms. Stephens and her parents meet with Nassar.

64.     Ms. Stephens refused to attend the meeting, but her parents met with Defendant Stollak and Nassar.

65.     Also in 2004, a 16-year old woman, Brianne Randall-Gay, reported Nassar's conduct to her parents and to the Meridian Township Police Department in Meridian Township, Michigan in 2004.

66.     The employees, agents, and/or representatives of Defendant MSU, including MSU trainers, coaches, Katie Klages, Lianna Hadden, and Gary Stollak, had a duty to report allegations of Nassar's inappropriate sexual conduct directed at Larissa Boyce, Christie Achenbach, Tiffany Thomas Lopez, Jennifer Rood Bedford, and Kyle Stephens.

67.     Because MSU took no action to investigate the 1997/1998, 1999, 2000, 2001/2002, and 2004 complaints and took no corrective action, from 1997 and/or 1998 to 2016, under the guise of treatment, several individuals, including Plaintiff, were sexually assaulted, abused, molested, and harassed by Nassar by vaginal digital penetration, without the use of gloves or lubricant and by touching and groping their breasts.

68.     Defendant MSU's deliberate indifference before, during, and after the sexual assault, battery, molestation, and harassment of Plaintiff was in violation of Title IX of the

11

Education Amendments of 1972, 20 U.S.C. § 1681 et seq., 42 U.S.C. § 1983, as well as other federal and state laws.

69.      Defendant MSU's failure to comply with Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, et seq., 42 U.S.C. 1983, and other federal and state laws, as describe herein this Complaint, contributed to the creation of a sexually hostile environment on MSU's campus between 1997 and 2018.

70.      In 2014, following receipt of an unrelated complaint regarding a sexual assault on Defendant MSU's campus, between 2014 and 2015 the U.S. Department of Education's Office of Civil Rights (hereinafter "OCR") conducted an investigation regarding the complainant's allegations, another complaint regarding sexual assault and retaliation from 2011, and Defendant MSU's response to said complaints, and their general policies, practices, and customs pertaining to their responsibilities under Title IX.

71.      The OCR concluded their investigation in 2015 and presented Defendant MSU with a twenty-one-page agreement containing measures and requirements to resolve the 2011 and 2014 complaints and to bring Defendant MSU in compliance with Title IX.[2]

72.      The report confirmed that the "OCR determined that the University's Title IX grievance procedures, in place during the time period covered by OCR's investigation, failed to comply with the requirements of Title IX." *Id.* at 3.

73.      The report further confirmed that the "OCR determined that a sexually hostile environment existed for and affected numerous students and staff on campus at the University during the time period covered by OCR's investigation; and that the University's failure to address complaints of sexual harassment, including sexual violence, in a prompt and equitable

---

[2] See, Letter from U.S. Deparhnent of Education Office for Civil Rights to Michigan State University, September 1, 2015, OCR Docket #15-11-2098, #15-14-2113. Available at https://www2.ed.gov/documents/press-releases/michigan-state-letter.pdf, last accessed January 4, 2017.

manner caused and may have contributed to a continuation of this sexually hostile environment." *Id.*

74.     While the OCR was conducting their investigation, additional complaints regarding Nassar's conduct surfaced in 2014. Amanda Thomashow reported she had an appointment with Nassar to address hip pain and was sexually abused and molested by Nassar when he cupped her buttocks, massaged her breast and vaginal area, and he became sexually aroused.

75.     Upon information and belief, Defendant MSU investigated the 2014 complaints through their Office of Institutional Equity.

76.     However, Amanda Thomashow reported to Defendant MSU facts which were omitted or withheld from the investigative report including but not limited to the following:

    a.   Nassar was sexually aroused while touching her;

    b.   The appointment with Nassar did not end until Amanda Thomashow physically removed his hands from her body.

77.     Three months after initiating the investigation, in July 2014, Amanda Thomashow's complaints were dismissed and Defendant MSU determined she didn't understand the "nuanced difference" between sexual assault and an appropriate medical procedure and deemed Nassar's conduct "medically appropriate" and "[n]ot of a sexual nature."

78.     Two of the medical experts consulted by the Office of Institutional Equity in investigating the victim's allegations were Defendants Lemmen and Teachnor-Hauk.

79.     Following the investigation, on or about July 30, 2014, Defendant Strampel sent an e-mail to Nassar that provided new institutional guidelines and restrictions that Nassar was subject to including:

    a.   Nassar was not to examine or treat patients alone but was to be accompanied by a chaperone such as a resident or nurse;

    b.   The alleged "procedure" was to altered to ensure there would be little to no skin to skin contact when in certain "regions" and if skin to skin contact was "absolutely necessary" the "procedure" was to be explained in detail with another person in the room for both the explanation and the "procedure;" and,

    c.   New people in the practice were to be "oriented" to ensure understanding with the guidelines.

80.    Defendant Strampel sent a copy of the July 30, 2014 e-mail that outlined Nassar's restrictions and guidelines to Defendant Dietzel. 119. At all relevant times, Defendant Dietzel, Defendant Strampel, and Defendant Kovan were acting in a supervisory role to Nassar.

81.    The MSU Defendants failed to take any actions to enforce or ensure that Nassar was in compliance with the restrictions outlined by Defendant Strampel in his July 30, 2014 e-mail to Nassar.

82.    Upon information and belief, the MSU Defendants failed to take any action to orient new MSU employees to ensure that they were aware of the restrictions placed on Nassar.

83.    In approximately March 2016, Diane Rork was an employee of MSU serving as a registered medical assistant.

84.    Through her employment with MSU, Diane Rork had occasion to work with patients who were to be seen by Nassar.

85.    At no point in time was Diane Rork ever told of any restrictions or guidelines regarding Nassar's treatment of patients.

86.    On one occasion in March 2016, Diane Rork was completing a chart of a girl

younger than 13 who was set to be examined by Nassar in an exam room at Defendant MSU's Sports Medicine Clinic.

87.     Nassar ordered Diane Rork to leave the room so that he could "treat" the young girl alone.

88.     Diane Rork reported her March 2016 interaction with Nassar to the MSU Police Department in January 2017.

89.     MSU terminated Diane Rork's employment approximately two weeks later.

90.     In addition, an unnamed registered nurse employed by MSU at the MSU Sports Medicine from approximately 2015 to 2016, has indicated that she was never made aware of any restrictions or guidelines concerning Nassar.

91.     This unnamed registered nurse was the only registered nurse employed by Defendant MSU's Sports Medicine Clinic during the time of her employment.

92.     From July 2014 to September 2016, despite complaints about Nassar's conduct and an open criminal investigation into Nassar's conduct, Defendant MSU continued to permit Nassar unfettered access to female athletes without adequate oversight or supervision to ensure he was complying with the new guidelines.

93.     In a March 14, 2017 interview with Michigan State University Police Department Detective Sergeant Christopher Rozman, Defendant Strampel admitted that the institutional restrictions and guidelines that Nassar was subject to were illusory in nature because he only shared them with Defendant Dietzel and took no action whatsoever to ensure that the institutional restrictions and guidelines were implemented, followed, or enforced.

94.     Defendant Strampel also told Detective Sergeant Rozman that he did not want any other employees in the Sports Medicine Clinic to know that Nassar had been accused of sexual

15

assault or that Nassar was subject to institutional restrictions or guidelines.

95.    Defendant Strampel also admitted to Detective Sergeant Rozman that he did not take any steps to orient any new employees at Defendant MSU's Sports Medicine Clinic to the institutional restrictions or guidelines that Nassar was purportedly subject to until after Nassar's termination.

96.    In a March 15, 2017 interview with Michigan State University Police Department Detective Lieutenant Andrea Munford, Michigan State University Police Department Detective Sergeant Christopher Rozman, and Federal Bureau of Investigation Special Agent Rodney Charles, Defendant Teachnor-Hauk stated that she had never had an athlete tell her that Nassar had made them uncomfortable or that Nassar had performed digital vaginal penetration.

97.    Defendant Teachnor-Hauk's March 15, 2017 statements to law enforcement were false for the reason that numerous athletes had previously reported concerns of uncomfortable and inappropriate treatment by Nassar to her, including complaints of digital vaginal penetration by Nassar under the guise of medical treatment.

98.    Plaintiff was made aware of Nassar's widespread sexual abuse sometime after September 12, 2016 through media coverage.

99.    Defendant MSU's failure to properly supervise Nassar and their negligence in retaining Nassar is in violation of Michigan common law.

100.    In 2004, Nassar authored a chapter in Principles of Manual Sports Medicine by Steven J. Karageanes.

101.    In the chapter, Nassar described the pelvic diaphragm, coccyx, and sacroiliac ligaments as an area of the body not fully examined due to its proximity to the genitalia and buttocks, and stated it was "referred to as the 'no fly zone' because of the many cultural stigmas

16

in touching this area."

102.    Nassar recommended taking "special measures to explain any examination and techniques applied in this region," and "warning in advance of what you are planning to do," among other suggestions.

103.    There is no mention of intravaginal or intra-rectal techniques or procedures in the chapter.

104.    As described in detail below, Nassar failed to follow his own recommendations with Plaintiff and others as:

    a.    He did not explain any intravaginal or intra-rectal techniques to Plaintiff or her parents; and,

    b.    He did not warn Plaintiff he was going to engage in vaginal or anal digital penetration before doing so.

105.    After receiving allegations of "athlete concerns," in approximately summer 2015, Defendant USAG relieved Nassar of his duties.

106.    Nassar's employment ended with Defendant MSU on approximately September 20, 2016 only after the MSU Defendants became aware that:

    a.    Nassar and USAG were sued by a former Olympian who alleged she was sexually assaulted by Nassar; and

    b.    A former patient of Nassar, Rachel Denhollander, filed a criminal complaint with the Michigan State University Police Department alleging Nassar sexually assaulted her when she was 15 years old and seeking treatment for back pain as a result of gymnastics. Ms. Denhollander's allegations of sexual assault by Nassar included but were not limited to:

17

     i. Massaging her genitals;

     ii. Penetrating her vagina and anus with his finger and thumb; and

     iii. Unhooking her bra and massaging her breasts.

107.    Reasons given to Nassar for his termination included but were not limited to:

    a.   Deviation from "required best practices put in place following the internal sexual harassment investigation conducted . . . in 2014;"

    b.   Failure to disclose a 2004 complaint to Meridian Township Police; and,

    c.   Dishonesty by Nassar when Defendant MSU questioned him about receiving prior complaints about the "procedure" at issue.

108.    Shortly after MSU terminated Nassar's employment, Defendant Klages requested the MSU Women's Gymnastics Team members to sign a card for the team to show their support for Nassar-despite the fact that Defendant Klages was aware that Nassar's employment had been terminated due to numerous claims of sexual assault against patients and athletes.

109.    Defendant Klages also passionately defended Nassar to the MSU Women's Gymnastics Team and told her athletes that she would trust her own grandkids with him-despite the numerous allegations of sexual assault against Nassar and the existence of open criminal investigations into his conduct.

110.    In September 2016, following MSU's termination of Nassar's employment, MSU Athletic Department's Director of Athletic Communications, Jamie Weir Baldwin, instructed members of the MSU Women's Gymnastics Team not to speak to the media or post on their social media accounts regarding Nassar's actions.

111.    Based on the communications of the MSU Athletic Department, members of the MSU Women's Gymnastics Team believed that they would be punished by MSU or face

consequences if they came forward to the police or media to describe sexual assaults against them.

112.     In December 2016, following the filing of federal child pornography charges against Nassar, Defendant Klages continued to defend Nassar and told the parent of one of Nassar's victims that the child pornography "could have been planted" by somebody suing Nassar and also continued to deny that Nassar had sexually assaulted any patients by suggesting that the victims had "misinterpreted the treatment."

113.     MSU did not directly encourage the members of the MSU Women's Gymnastics Team to report suspected abuse by Nassar to the police until February 2017—approximately 5 months after MSU terminated Nassar's employment.

114.     In late November 2016, Nassar was arrested and charged in Ingham County, Michigan on three charges of first-degree criminal sexual conduct with a person under 13, and was later released on a $1 million bond.

115.     In mid-December 2016, Nassar was indicted, arrested, and charged in the United States District Court for the Western District of Michigan in Grand Rapids, Michigan on charges of possession of child pornography and receipt/attempted receipt of child pornography.

116.     According to the federal indictment, Nassar:

   a.  Knowingly received and attempted to receive child pornography between approximately September 18, 2004 and December 1, 2004;

   b.  Knowingly possessed thousands of images of child pornography between approximately February 6, 2003 and September 20, 2016, including images involving a minor who was under the age of 12.

117.     Testimony given by an FBI agent at a hearing held on December 21, 2016,

alleged, among other allegations, that Nassar used a GoPro camera to record video images of children in a swimming pool and that:

    a.   Nassar's hand can be seen grabbing one girl's hand and shoving it into the vaginal area of another girl; and

    b.   Nassar's thumb can be seen pressing into a child's vagina/vaginal area.

118.    In mid-January 2017, Brooke Lemmen, D.O. submitted a letter of resignation to Mr. Strampel amid allegations that she:

    a.   Removed several boxes of confidential treatment patient records from Defendant MSU's Sports Medicine clinic at Nassar's request;

    b.   Did not disclose to Defendant MSU that USAG was investigating Nassar as of July 2015; and

    c.   Made a staff member feel pressured not to fully cooperate in an internal investigation into allegations against Nassar.

119.    On February 7, 2017, a superseding indictment added an additional count of "Destruction and Concealment of Records and Tangible Objects" alleging between September 19, 2016 and September 20, 2016, Nassar "caused a third-party vendor to permanently delete and destroy all images, records, documents, and files contained on the hard drive of a laptop computer, and the defendant threw in the trash a number of external hard drives."

120.    On February 17, 2017, following a preliminary examination, Nassar was ordered to stand trial on three charges of first-degree criminal sexual conduct with a person under 13 in Ingham County following testimony, which included, among other, allegations of digital vaginal penetration at Nassar's residence.

121.    On February 22, 2017, Nassar was arraigned on 22 counts of first-degree criminal

sexual conduct with a person under 13 years old, and 14 counts of third-degree criminal sexual conduct with a person under 13 years old in Ingham County, Michigan and Eaton County, Michigan.

122.     On March 17, 2017, Defendant MSU's Office of Institutional Equity released a Title IX report concluding that Nassar sexually assaulted one of his patients, Rachael Denhollander, in or about 2000. The report stated that evidence supports a finding that Nassar "committed these acts in a sexual manner regardless of whether it was done for medical purposes."

123.     At least three more internal Title IX investigations conducted by Michigan State University following the Title IX investigation for Rachael Denhollander determined Larry Nassar violated University policy.

124.     Nassar's preliminary examinations on the second set of charges in Ingham County was held on May 12, 2017, May 26, 2017, and June 23, 2017.

125.     At the conclusion of the preliminary examinations, Nassar was ordered to stand trial on 12 counts of first-degree criminal sexual conduct following testimony by Rachael Denhollander and others, which included among others, allegations of digital vaginal penetration by Nassar.

126.     Nassar's preliminary examination on the charges issued in Eaton County, Michigan was held on June 30, 2017.

127.     At the conclusion of the preliminary examination, Nassar was ordered to stand trial on 7 counts of first-degree criminal sexual conduct following testimony, which included among others, allegations of digital vaginal penetration by Nassar.

128.     Nassar faces a total of 22 counts of first-degree criminal sexual conduct in Circuit

Court – 15 in Ingham County, Michigan and 7 in Eaton County, Michigan.

129.    On or about July 11, 2017, Nassar pled guilty in his federal criminal case to: (1) Receipt and Attempted Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A); (2) Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B); and (3) Destruction and Concealment of Records and Tangible Objects, in violation of 18 U.S.C. § 1519.

130.    On November 11, 2017 Nassar pleaded guilty to seven counts of first-degree criminal sexual conduct in Ingham County Circuit Court.

131.    On November 29, 2017 Nassar pleaded guilty to three counts of first-degree criminal sexual conduct in Eaton County Circuit Court.

132.    On December 7, 2017 Nassar was sentenced in the United States District Court for the Western District of Michigan by District Court Judge Janet T. Neff to three twenty-year sentences to be served consecutively on his convictions for (1) Receipt and Attempted Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A); (2) Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B); and (3) Destruction and Concealment of Records and Tangible Objects, in violation of 18 U.S.C. § 1519.

133.    On January 24, 2018, Nassar was sentenced in the Ingham County Circuit Court for the State of Michigan by the Honorable Rosemarie E. Aquilina to 40 to 175 years in prison on seven sexual assault charges.

134.    On February 5, 2018, Nassar was sentenced in the Eaton County Circuit Court for the State of Michigan by the Honorable Janice K. Cunningham to 40 to 125 years in prison on three sexual assault charges.

135.    The acts, conduct, and omissions of the MSU Defendants, and their policies,

customs, and practices with respect to investigating sexual assault allegations severely compromised the safety and health of Plaintiff and an unknown number of individuals, and have resulted the sexual assault, battery, molestation, and harassment of Plaintiff by Nassar, which has been devastating for Plaintiff and her family.

136.   A special, confidential, and fiduciary relationship was created between Plaintiff and Nassar when Plaintiff sought medical treatment from Nassar in the course of his employment, agency, and/or representation of the MSU Defendants, resulting in Nassar owing Plaintiff a duty to disclose known acts of sexual assault, battery, molestation, and harassment against Plaintiff.

137.   A special, confidential, and fiduciary relationship was created between Plaintiff and the MSU Defendants when Plaintiff sought medical treatment from Nassar in the course of his employment, agency, and/or representation of the MSU Defendants, resulting in the MSU Defendants owing Plaintiff a duty to disclose known acts of sexual assault, battery, molestation, and harassment against Plaintiff.

138.   A special, confidential, and fiduciary relationship was created and existed between Nassar and the MSU Defendants, resulting in the MSU Defendants owing Plaintiff a duty to disclose known acts of sexual assault, battery, molestation, and harassment to Plaintiff.

139.   This action arises from Defendants' blatant disregard for Plaintiff's federal and state rights, and Defendants' deliberately indifferent and unreasonable response to physician-on-patient sexual assault, battery, molestation, and harassment.

### ALLEGATIONS SPECIFIC TO PLAINTIFF

140.   Amanda Hancock was born in November of 1987 and is currently 30 years old.

141.   She was involved in ballet and first went to MSU Sports Medicine Clinic, a

wholly owned affiliate of Michigan State University in December 2004 for back and ankle pain when she was 17.

142.    While at the Clinic, someone suggested that she see Nassar for her injury, and she did.

143.    Because of her active involvement in ballet, Ms. Hancock continued to have various orthopedic injuries (knee, ankle, neck, ribs, thoracic spine, lumbar spine, hips, etc.) and to see Nassar for those injuries.

144.    During Nassar's employment with MSU, and under the false pretense that what he was doing was proper medical treatment, Nassar sexually assaulted, battered, abused, and molested Plaintiff by manipulating and applying pressure to her breasts and genital area around her vagina and anus and digitally penetrating her vagina without Plaintiff's consent and without medical purpose.

145.    In early 2005, at one of Ms. Hancock's first appointments with Nassar, he manipulated and applied pressure to her breasts.

146.    At subsequent appointments, Nassar continued to manipulated and applied pressure to her breast and likewise manipulated and applied pressure to her genital area around her vagina and anus.

147.    Starting in 2008 and continuing to 2011, Dr. Nassar would digitally penetrate her vagina and press with his thumb and forefinger around her vagina and anus.

148.    Both before and after committing these acts of sexual molestation, Dr. Nassar claimed and represented to Ms. Hancock that this conduct was a component of his medical treatment, "to relieve pain, release muscle tension and free up nerve connections in her legs and lower back," provide "myofascial release," and had to do with the "butt and head connection."

24

149.     In this manner, Dr. Nassar fraudulently concealed that his conduct was not for any medically appropriate purpose, but rather for his own sexual gratification, and further concealed the existence of Ms. Hancock's civil claims against him and others for his conduct, including claims for assault and battery and fraud.

150.     Ms. Hancock's last purported medical appointment with Dr. Nassar was in 2012.

**ALLEGATIONS OF FRAUDULENT CONCEALMENT—MSU DEFENDANTS**

151.     Plaintiff incorporates each preceding Paragraph as though fully restated herein.

152.     The MSU Defendants, their agents, apparent agents, servants and employees committed Fraud and Fraudulent Concealment, as described in detail above and below; making fraudulent material misrepresentations to Plaintiff that were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of the fraud; concealing the existence of Plaintiff's claims and that Plaintiff had and has causes of action against the MSU Defendants at and after the time Nassar's sexual assaults occurred; and making material representations to Plaintiff involving past or existing facts by:

    a.  Making the statement, explaining, that his acts and/or conduct were a "new procedure" which involved vaginal or anal penetration;

    b.  Making the statement, referring to his conduct, disguised as "treatment," as a pelvic adjustment;

    c.  Making the statement, explaining, that his acts and/or conduct was "checking your sternum";

    d.  Making the statement, explaining, that his acts and/or conduct was doing a "breast exam";

    e.  Making the statement, explaining, that his acts and/or conduct was medical

"treatment" or for a legitimate medical purpose;

f.   Making the statement, explaining, that his acts and/or conduct was "attempting to manipulate [their] ribs"; and,

g.   Making a statement, explaining to Plaintiff and/or another medical professional; that the position of his hand was in an appropriate place, when it was not and while he was digitally penetrating Plaintiff, all which were made contemporaneously and/or shortly after the abrupt, sudden, quick, and unexpected sexual assaults by Nassar.

153.   The material representation(s) to Plaintiff were false, in that Nassar was actually performing them for his own sexual gratification and pleasure evidenced by his observed arousal, flushed face, and closing of the eyes during the conduct.

154.   When the MSU Defendants, their agents, apparent agents, servants and employees made the material representation(s), they knew that they were false, in that they knew that the "treatment[s]" were not proper, appropriate, legitimate, and/or considered within standard of care by any physician of any specialty and/or sports therapist.

155.   The MSU Defendants, their agents, apparent agents, servants and employees made the material representation(s) with the intent that the material representation(s) should be acted or relied upon by Plaintiff and/or her parent(s), such that Plaintiff:

a.   Should believe that the "treatments" were in fact legitimate medical "treatments";

b.   Should believe that the "treatment[s]" were proper, appropriate, and legitimate;

c.   Should not believe that she had been sexually assaulted;

d.   Should not believe that she had been sexually assaulted so that he could prevent discovery of his sexual assaults;

26

e.  Should continue the "treatment[s]" so that he could continue to sexually assault her;

f.  Should not question and/or report the conduct to appropriate authorities; and

g.  Should not reasonably believe and not be aware of a possible cause of actions that she has against Nassar, the MSU Defendants, and others.

156.  Plaintiff acted in reliance upon the material representation(s), in that Plaintiff:

a.  Reasonably believed that the "treatments" were in fact "treatments";

b.  Reasonably believed that the "treatments" were proper, appropriate, and legitimate;

c.  Reasonably did not believe that they had been sexually assaulted;

d.  Believed that they should continue the "treatment[s]";

e.  Did not believe that they should question and/or report the conduct to appropriate authorities; and,

f.  Did not reasonably believe that they had and were not aware of a possible cause of action that they had against Nassar, the MSU Defendants, and others.

157.  Plaintiff thereby suffered injury, in that Plaintiff:

a.  Could not stop the sexual assault;

b.  Continued to undergo the "treatment[s]" and sexual assaults;

c.  And suffered discomfort, bleeding, urinary tract infections, bacterial infections, related physical manifestations thereof, sleep deprivation, physical illness, vomiting, severe emotional distress, shock, humiliation, fright, grief, embarrassment, loss of self-esteem, disgrace, loss of familial relationships, loss of enjoyment of life and will continue to suffer pain of mind and body, was

prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity, among other injuries more fully described below.

158.     The MSU Defendants, their agents, apparent agents, servants and employees concealed the fraud by affirmative act(s) that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that Nassar:

    a.   Positioned himself in a manner in which parents or chaperones in the room could not see his conduct, so that he could conceal and prevent discovery of his conduct;

    b.   Prevented other medical professionals, chaperones, parents, guardians, and/or caregivers from being in the room during examinations and treatments of Plaintiff so that he could sexually assault Plaintiff;

    c.   Did not abide by or follow the standard and care which requires another medical professional, chaperone, parent, guardian, and/or caregiver be in the room during the examination and treatment of minors and female patients; and

    d.   Did not abide by or follow the restrictions that had been put into place in 2014 by Defendant MSU restricting his examination and treatment of patients only with another person in the room.

159.     Defendant MSU's sports medicine trainers, trainers, employees, staff, managers, supervisors, directors, agents, apparent agents, and/or servants made material representation(s) to Plaintiff involving a past or existing fact by making statements that:

    a.   Nassar was an "Olympic doctor" and "knew what he was doing" in regard to

performing appropriate "treatments";

b. Nassar was a "world-renowned doctor" and that "it was legitimate medical treatment," in regard to the legitimacy and appropriateness of the "treatments";

c. Nassar's conduct was "not sexual abuse"; and

d. Nassar's conduct and "treatment[s]" were "medically appropriate" and "[n]ot of a sexual nature" because the complainant "didn't understand the 'nuanced difference' between sexual assault and an appropriate medical procedure."

160. The material representation(s) to Plaintiff were false, in that the MSU Defendants had previously received strikingly similar complaints of abuse by Nassar from other patients, students, and student athletes and knew that the appropriateness of his "treatment[s]" had been questioned in the past.

161. When the MSU Defendants, their agents, apparent agents, servants and employees made the material representation(s), they knew that they were false and/or made the material representation(s) recklessly, without any knowledge of their truth and as a positive assertion, in that they knew that Defendant MSU had previously received strikingly similar complaints of abuse by Nassar from other students and student athletes and knew that the appropriateness of his "treatment[s]" had been questioned in the past.

162. The MSU Defendants, their agents, apparent agents, servants and employees made the material representation(s) with the intent that the material representation(s) should be acted upon by Plaintiff, in that Plaintiff:

a. Should believe that the "treatments" were in fact "treatments";

b. Should believe that the "treatment[s]" were proper, appropriate, and legitimate;

c. Should not believe that she had been sexually assaulted;

d. Should not question and/or report the conduct to other authorities; and,

e. Should not reasonably believe and not be aware of a possible cause of action that she had against Nassar and/or the MSU Defendants.

163. Plaintiff acted in reliance upon the material representation(s), in that Plaintiff:

a. Reasonably believed that the "treatments" were in fact "treatments";

b. Reasonably believed that the "treatments" were proper, appropriate, and legitimate;

c. Reasonably did not believe that she had been sexually assaulted;

d. Reasonably believed that she should continue the "treatment[s]";

e. Did not believe that she should question and/or report the conduct to appropriate authorities; and,

f. Did not reasonably believe that she had and was not aware of a possible cause of action that she had against Nassar and/or Defendant MSU.

164. Plaintiff thereby suffered injury, in that Plaintiff:

a. Could not stop the sexual assault;

b. Continued to undergo the "treatment[s]" and sexual assaults; and,

c. Suffered discomfort, bleeding, urinary tract infections, bacterial infections, related physical manifestations thereof, sleep deprivation, physical illness, vomiting, severe emotional distress, shock, humiliation, fright, grief, embarrassment, loss of self-esteem, disgrace, loss of familial relationships, loss of enjoyment of life and will continue to suffer pain of mind and body, was prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and

earning capacity, among other injuries more fully described below.

165. The MSU Defendants, their agents, apparent agents, servants and employees concealed the fraud by making a fraudulent material representation(s) to Plaintiff that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that they made a material representation(s) to Plaintiff involving a past or existing fact by:

    a. Making the statement that Nassar was an "Olympic doctor" and "knew what he was doing" in regard to performing appropriate "treatments;"

    b. Making the statement that Nassar was a "world-renowned doctor" and that "it was legitimate medical treatment," in regard to the legitimacy and appropriateness of the "treatments";

    c. Making the statement that Nassar's conduct was "not sexual abuse," that he was a "world-renowned doctor"; and,

    d. Making the statement that Nassar's conduct and "treatment[s]" were "medically appropriate" and "[n]ot of a sexual nature" because the complainant "didn't understand the 'nuanced difference' between sexual assault and an appropriate medical procedure."

166. The MSU Defendants, their agents, apparent agents, servants and employees concealed the fraud by affirmative acts that were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that they:

    a. Ignored, refused, and failed to inquire, question, and investigate the complaints and take action regarding Nassar's "treatments";

    b. Did not create a policy to require adults, parents, chaperones, guardians, and/or

caregiver's presence during an examination of a minor or female by a physician; and,

    c. Did not enforce the restrictions that had been put into place in 2014 by Defendant MSU restricting his examination and treatment of patients only with another person in the room.

167. Plaintiff did not know, could not have reasonably known, and was reasonably unaware of possible causes of action that she had against Nassar and/or the MSU Defendants until sometime after the September 12, 2016 publication of a story regarding a complaint filed with Defendant MSU's Police Department, titled "Former USA Gymnastics Doctor Accused of Abuse," for the following reasons among others:

    a. Plaintiff reasonably relied on the Fraud committed by Nassar by his material representations and concealment of the true nature of his "treatments[s]"and his actions;

    b. Plaintiff was a minor and/or a young female at the time of the assaults and "treatments";

    c. Plaintiff did not know what a legitimate and appropriately performed intra-vaginal or intra-anal/rectal treatment was like because they had never experienced and/or had an intra-vaginal or intra-anal/rectal treatment before;

    d. Plaintiff had never experienced and/or had an intra-vaginal treatment before because they had never been treated by a physician and/or therapist that performed them;

    e. Plaintiff did not know what a legitimate and appropriately performed pelvic, vaginal, anal, and/or breast exam was like because they had never experienced

and/or had a pelvic, vaginal, anal, and/or breast exam before;

f.  Plaintiff had never experienced and/or had a pelvic and/or vaginal exam before because pelvic and/or vaginal exams are not recommended and routinely performed until a female reaches at least the age of 18 years old, pursuant to longstanding recommendations in the literature, expert opinions, treatment guidelines, and position statement from the American Academy of Pediatrics, American Academy of Family Physicians, American Cancer Society, American College of Obstetricians and Gynecologists, American Society for Clinical Pathology, and American Society for Colposcopy and Cervical Pathology;

g.  Plaintiff had never experienced and/or had a breast exam before because breast exams are not recommended and routinely performed until a female reaches at least the age of 21 years old, pursuant to longstanding recommendations in the literature, expert opinions, treatment guidelines, and position statement from the American Academy of Pediatrics, American Academy of Family Physicians, American Cancer Society, American College of Obstetricians and Gynecologists, American Society for Clinical Pathology;

h.  Because of these recommendations and never having had one of these treatments or exams, it was very difficult if not impossible for Plaintiff to differentiate a legitimate and appropriately performed intra-vaginal treatment, pelvic, vaginal, anal, and/or breast exam from a sexual assault;

i.  Plaintiff could not have possibly known because there were no parents, chaperones, guardians, caregivers, and/or other medical professionals in the room during the "treatments" to observe, question, and/or discover that his "treatments"

were sexual assaults and inform Plaintiff that they had been sexually assaulted and had a cause of action against Nassar;

j.   In the instances where a parent was present in the room, Nassar's actions to conceal the physical assaults from the view of the parents prevented the parents from discovering that his "treatments" were sexual assaults and informing Plaintiff that she had been sexually assaulted and had a cause of action against Nassar;

k.   Based on Neuroscience, the prefrontal cortex of the brain, which we use to make decisions and distinguish right from wrong, is not fully formed until around the age of 23;

l.   Based on Neuroscience, as the prefrontal cortex of the brain matures teenagers are able to make better judgments;

m.   Plaintiff was intimidated by Nassar's notoriety and reputation and therefore believed his misrepresentations that the "treatment[s]" were legitimate and appropriate;

n.   Plaintiff trusted Nassar due to his notoriety and reputation;

o.   Plaintiff trusted Nassar because he groomed them to believe that his "treatments" were legitimate;

p.   Plaintiff had no reason to believe or be aware that they could possibly sue or had a possible cause of action because she was a minor and young female who was not knowledgeable or aware of the civil justice system;

q.   Plaintiff had no reason to believe or be aware that they could possibly sue or had a possible cause of action because she was a minor and a young female who was

not knowledgeable or aware of any remedy at law;

r.  Plaintiff had no reason to believe or be aware that they could possibly sue or had a possible cause of action evidenced by the fact that so many other girls had been sexually assaulted by Nassar over the past few decades, none of them had a reason to believe or be aware that they could possibly sue or had a possible cause of action in the past; and none of them have ever sued him in the past;

s.  Plaintiff was never told by Nassar that his conduct was sexual in nature and not legitimate and appropriate "treatment[s]" and to conceal the sexual conduct from their parents and others, unlike other victims of sexual abuse who are typically told by their perpetrators that their conduct is of a sexual nature and to conceal the sexual conduct from their parents and others;

t.  Plaintiff was a minor and then a young adult; therefore, she was easily suggestible; and,

u.  Plaintiff had never previously heard about any allegations in the media regarding sexual assaults or misconduct by Nassar.

v.  Plaintiff reasonably relied on the Fraud committed by Defendant MSU by their material representations and concealment of the true nature of Nassar's "treatments[s]" and his actions;

w.  Plaintiff trusted Defendant MSU that they would protect Plaintiff from harm and not hire, employee, and/or retain a physician that had, was, or would perform illegitimate and/or inappropriate "treatment[s]," engage in inappropriate conduct, and/or sexually assault patients, students, and/or athletes;

x.  Plaintiff was never told by Defendant MSU that Nassar's conduct and

"treatment[s]" were inappropriate and sexual assault, to the contrary Plaintiff was told that Nassar's conduct and "treatment[s]" were appropriate and legitimate "treatment[s]," "not sexual abuse," "medically appropriate," and "[n]ot of a sexual nature" from a "world-renowned" and "Olympic doctor," who "knew what he was doing" and that Plaintiff, because of her age and inexperience with intra-vaginal treatment, pelvic, vaginal, anal, and/or breast exams, "didn't understand the 'nuanced difference' between sexual assault and an appropriate medical procedure"; and

y.  Plaintiff reasonably relied on Defendant MSU to protect her and Defendant MSU's statements.

168.  The actions and inactions of the MSU Defendants, their agents, apparent agents, servants and employees, as described in the preceding paragraphs, constituted Fraudulent Concealment.

169.  At all times pertinent to this action, Nassar was an agent, apparent agent, servant, and employee of Defendant MSU and operated within the scope of his employment and his Fraudulent Concealment is imputed to Defendant MSU.

170.  The actions and inactions of the sports medicine trainers, trainers, employees, staff, managers, supervisors, and directors of the MSU Defendants, as described in the preceding paragraphs, constituted Fraudulent Concealment.

171.  At all times pertinent to this action, the sports medicine trainers, trainers, employees, staff, managers, supervisors, and directors of Defendant MSU were agents, apparent agents, servants, and employees of Defendant MSU and operated within the scope of their employment and their Fraudulent Concealment is imputed to Defendant MSU.

172.    At all times material hereto, Plaintiff was entirely free of any negligence contributing to the injuries and damages hereinafter alleged.

## COUNT I—VIOLATION OF TITLE IX OF THE EDUCATION ACT OF 1972, 20 U.S.C. §§ 1681 *ET SEQ.* (AGAINST MSU DEFENDANTS)

173.    Plaintiff incorporates each preceding Paragraph as though fully restated herein.

174.    Title IX, 20 U.S.C. § 1681(a) provides in pertinent part: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . ."

175.    "Title IX also protects third parties from sexual harassment or violence in a school's education programs and activities."

176.    Under Title IX, sexual harassment is any type of unwelcome conduct of a sexual nature. "It includes unwelcome sexual advances, requests for sexual favors, and other verbal, nonverbal, or physical conduct of a sexual nature."

177.    Plaintiff is a "person" within the meaning of 20 U.S.C. §1681(a).

178.    Defendant MSU receives financial assistance for its education program and is therefore subject to the provisions of Title IX of the Education Act of 1972, 20 U.S.C. § 1681, *et seq.*

179.    The U.S. Department of Education's Office of Civil Rights has explained that Title IX covers all programs of a school, and extends to sexual harassment and assault by employees, students, and third parties.

180.    Nassar's actions and conduct were carried out under one of Defendant MSU's programs, which provides medical treatment and medical care to students, including student athletes, and members of the general public.

181.   Nassar's sexual assault, battery, molestation, and harassment of Plaintiff, including the massaging of breasts and vaginal areas, constitutes sexual discrimination and harassment under Title IX.

182.   Nassar's sexual assault, battery, molestation, and harassment of Larissa Boyce, Christie Achenbach, and Tiffany Thomas Lopez constituted sexual discrimination and harassment under Title IX.

183.   Pursuant to Title IX, Defendant MSU is obligated and required to investigate all allegations of sexual assault, battery, molestation, and harassment, including allegations that sexual assault, battery, molestation, and harassment has been committed by an employee, student, or third party.

184.   Defendant MSU owed Plaintiff duties under Title IX, which duties included not to engage in and be deliberately indifferent to known sexual assault, battery, molestation, harassment, and other sexual misconduct.

185.   Upon information and belief, an "appropriate person" at MSU, within the meaning of Title IX, including but not limited to, Kathie Klages, Kelli Bert, Lianna Hadden, Destiny Teachnor-Hauk, Gary Stollak, and other trainers and coaches, had actual and constructive notice of sexual assault, battery, molestation, and harassment committed by Nassar in 1997/1998, 1999, 2000, 2001/2002, 2004 and 2014, as described herein this Complaint.

186.   The MSU Defendants failed to carry out their duties to investigate and take corrective action, as well as to make appropriate recommendations, including informed consent, under Title IX following the complaints of sexual assault, as described herein.

187.   Despite the complaints and concerns conveyed to Defendant MSU employees, agents, and/or representatives as described herein, allegations went unaddressed, which violated

reporting policies and procedures and Title IX and was done in a manner that was reckless, grossly negligent, and deliberately indifferent.

188.    The MSU Defendants acted with indifference and in a clearly unreasonable manner by failing to respond to the allegations of sexual assault, abuse, and molestation in light of the known circumstances, Nassar's conduct toward female athletes, and his access to young girls and young women.

189.    The MSU Defendants' deliberate indifference is further confirmed by the Department of Education's investigation into MSU's handling of sexual assault and relationship violence allegations, which revealed:

    a.   That the MSU Defendants' failure to adequately respond to allegations of sexual assault created a sexually hostile environment and affected numerous students and staff on MSU's campus; and

    b.   That the MSU Defendants' failure to address complaints of sexual violence in a prompt and equitable manner caused and may have contributed to a continuation of the sexually hostile environment.

190.    The MSU Defendants' responses were clearly unreasonable as Nassar continued to sexually assault female athletes and other individuals until he was discharged from the University in 2016.

191.    MSU Defendants had actual and constructive knowledge of, but were recklessly and deliberately indifferent to, Nassar's sexual assault, battery, molestation, and harassment in between 1997 and/or 1998 and 2016.

192.    Defendant MSU's failure to investigate and take corrective actions to complaints of Nassar's sexual assault, battery, molestation, and harassment in 1997/1998, 1999, 2000,

2001/2002, 2004, and 2014 led to others, including Plaintiff, being sexually assaulted, battered, molested, and harassed by Nassar.

193.    The MSU Defendants were notified again in 2014 of Nassar's conduct when Amanda Thomashow reported she had an appointment with Nassar to address hip pain and was sexually abused and molested by Nassar when he cupped her buttocks, massaged her breast and vaginal area, and he became sexually aroused.

194.    Amanda Thomashow reported to Defendant MSU facts which were omitted or withheld from the investigative report including but not limited to the following:

a.  Nassar was sexually aroused while touching her;

b.  The appointment with Nassar did not end until she physically removed his hands from her body.

195.    Three months after initiating an investigation, in July 2014, Amanda Thomashow's complaints were dismissed and Defendant MSU determined she didn't understand the "nuanced difference" between sexual assault and an appropriate medical procedure and deemed Nassar's conduct "medically appropriate" and "Not of a sexual nature."

196.    In addition, MSU produced two different versions of the report in response to the July 2014 investigation—one version was sent to Amanda Thomashow and a different version was sent to Nassar and other MSU personnel.

197.    Following the 2014 investigation, Nassar became subject to new institutional guidelines, including requirements that Nassar minimize or eliminate skin-to-skin contact and to have a chaperone in the room.

198.    The MSU Defendants failed to adequately supervise or otherwise ensure Nassar complied with the newly imposed institutional guidelines even though the MSU Defendants had

actual knowledge that Nassar posed a substantial risk of additional sexual abuse of the females whom he had unfettered access.

199.    Defendant MSU's deliberate indifference before, during, and after the sexual assault, battery, molestation, and harassment of Plaintiff was in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*

200.    Defendant MSU's failure to properly and appropriately investigate and take corrective action for the 1997/1998, 1999, 2000, 2001/2002, 2004, and 2014 complaints of Nassar's sexual assault, battery, molestation, and harassment resulted in Plaintiff being subject to further sexual assault, battery, molestation, harassment, and a sexually hostile environment.

201.    The MSU Defendants' failure to promptly and appropriately investigate and remedy and respond to the sexual assaults after they received notice subjected Plaintiff to further harassment and a sexually hostile environment, effectively denying them access to educational opportunities at MSU, including medical care.

202.    Defendant MSU's responses to the complaints 1997/1998, 1999, 2000, 2001/2002, 2004, and 2014 were clearly unreasonable as Nassar continued to sexually assault young females until he was discharged from the University in 2016.

203.    The MSU Defendants failed to offer counseling services to current or former patients of Nassar, including Plaintiff.

204.    As a direct and proximate result of the MSU Defendants' actions and inactions, Plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has

41

sustained and continues to sustain loss of earning and loss of earning capacity.

## COUNT II
## VIOLATION OF THE AFFORDABLE CARE ACT, 42 U.S.C. §§ 18116 *ET SEQ.*
### (AGAINST DEFENDANT MSU AND THE MSU BOARD OF TRUSTEES)

205.    Plaintiff incorporates each preceding Paragraph as though fully restated herein.

206.    Section 1557 of the Patient Protection and Affordable Care Act, which is codified

at 42 U.S.C. § 18116, provides that:

> Except as otherwise provided for in this title (or an amendment made by this title), an individual shall not, on the ground prohibited under . . . title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.) . . . be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under this title (or amendments). The enforcement mechanisms provided for and available under . . . title IX shall apply for purposes of violations of this subsection.

207.    Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 et seq.

prohibits sex discrimination in programs that receive federal financial assistance.

208.    Plaintiff, as a female, has a right under 42 U.S.C. § 18116 to receive health care

services free from discrimination on the basis of sex.

209.    Plaintiff is an "individual[]" within the meaning of 42 U.S.C. § 18116.

210.    Defendant MSU receives Federal financial assistance within the meaning of 42

U.S.C. § 18116, because it receives federal financial assistance such as credits, subsidies, or

contracts of insurance.

211.    Nassar's conduct and actions toward Plaintiff, including nonconsensual digital

vaginal penetration, touching of Plaintiff's vaginal area, touching of Plaintiff's breasts, and other

sexual touching as described herein this Complaint constitutes sex discrimination under Title IX

and 42 U.S.C. § 18116.

212.    The conduct of Defendants MSU and the MSU Board of Trustees described above constitutes sex discrimination against Plaintiff.

213.    Defendants MSU and the MSU Board of Trustees perpetrated this discrimination with malice, deliberate disregard for, or deliberate or reckless indifference to Plaintiff's rights.

214.    The MSU Defendants' failure to promptly and appropriately investigate and remedy and respond to the sexual assaults after they received repeated notice of Nassar's wrongdoing subjected Plaintiff and countless others to further sexual harassment and sexual assaults as well as a sexually hostile environment-effectively denying them all access to any health program or activity at MSU.

215.    As a direct and proximate result of the MSU Defendants' actions and inactions, Plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

216.    In the alternative, the actions or inaction of the MSU Defendants was deliberately indifferent or so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff and constitutes gross negligence that is the proximate cause of Plaintiff's damages. Plaintiff has suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiff was prevented and

43

will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

**COUNT III**
**VIOLATION OF CIVIL RIGHTS, 42 U.S.C. § 1983**
**(AGAINST DEFENDANTS KLAGES, STRAMPEL, DIETZEL, AND KOVAN)**

217.    Plaintiff incorporates each preceding Paragraph as though fully restated herein.

218.    Plaintiff, as a female, is a member of a protected class under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

219.    Plaintiff enjoys the constitutionally protected Due Process right to be free from the invasion of bodily integrity through sexual assault, battery, molestation, and harassment.

220.    At all times pertinent hereto, Defendants Klages, Strampel, Kovan, Dietzel, Lemmen, and Nassar were acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs, and usages of the State of Michigan and/or Defendant Michigan State University.

221.    The acts as alleged above amount to a violation of these clearly established constitutionally protected rights, of which reasonable persons in the MSU Defendants' position should have known.

222.    Defendants Klages, Strampel, Dietzel, and Kovan had, at all time pertinent hereto, the ultimate responsibility and authority to train and supervise their employees, agents, and representatives, in the appropriate manner of detecting, reporting, and preventing sexual abuse, assault, and molestation and as a matter of acts, custom, policy, and/or practice failed to do so with deliberate indifference.

223.    At all times pertinent hereto, Defendants Strampel, Dietzel, and Kovan acted in a

supervisory role to Nassar through their roles at the MSU Sports Medicine Clinic, MSU's College of Osteopathic Medicine, and other affiliated MSU departments or institutions.

224.    At all times pertinent hereto, Defendant Klages, as the head coach of the MSU Women's Gymnastics Team, acted in a supervisory role to Nassar while he was acting as team physician to the MSU Women's Gymnastics Team.

225.    As a matter of custom, policy, and/or practice, Defendant Klages had the ultimate responsibility and authority to investigate complaints from her athletes that involved allegations of impropriety or sexual assault by her team physician.

226.    As a matter of custom, policy, and/or practice, Defendants Klages, Strampel, Dietzel, and Kovan had and have the ultimate responsibility and authority to investigate complaints against their employees, agents, and representatives from all individuals including, but not limited to students, visitors, faculty, staff, or other employees, agents, and/or representatives, and failed to do so with deliberate indifference.

227.    Defendant Lemmen's actions in assisting to exonerate Nassar from wrongdoing in response to the 2014 Title IX investigation and Defendant Lemmen's removal of Nassar's patient medical records from the MSU Sports Medicine Clinic at Nassar's request demonstrate the existence of an agreement or conspiracy between Nassar and Defendant Lemmen to deprive Plaintiffs of their constitutional rights.

228.    Defendants Klages, Strampel, Dietzel, Lemmen and Kovan, as well as Nassar, had a duty to prevent sexual assault, abuse, and molestation of MSU's patients, athletes, and other members of the public who utilize MSU's resources, those duties arising under the above-referenced constitutional rights.

229.    Defendant MSU's internal policies provide that "[a]ll University employees . . .

45

are expected to promptly report sexual misconduct or relationship violence that they observe or learn about and that involves a member of the University community (faculty, staff or student) or occurred at a University event or on University property." They further provide that "[t]he employee must report all relevant details about the alleged relationship violence or sexual misconduct that occurred on campus or at a campus-sponsored event."

230.    This policy was violated in or around 1997 and/or 1998 when Larissa Boyce and Jane B8 Doe reported sexual assault, abuse, and molestation by Nassar to Defendant Kathie Klages, and Defendant Klages refused to report the incident and instead intimidated, humiliated, and embarrassed Larissa Boyce and Jane B8 Doe.

231.    Defendant Klages's violation of the policy by refusing to take any action in response to legitimate and credible claims of sexual assault by Larissa Boyce and Jane B8 Doe resulted in Plaintiffs' continued violations of their constitutional rights, including their Due Process right to bodily integrity, which includes the right to be free from sexual assaults.

232.    Defendant Klages's actions as alleged above also demonstrate the existence of an agreement or conspiracy between Nassar and Defendant Klages to deprive Plaintiff of her constitutional rights.

233.    By failing to prevent the aforementioned sexual assault, abuse, and molestation upon Plaintiffs, and by failing to appropriately respond to numerous reports of Nassar's sexual assault, abuse, and molestation in a manner that was so clearly unreasonable it amounted to deliberate indifference, Defendants Klages, Strampel, Dietzel, Lemmen, and Kovan, as well as Nassar, are liable to Plaintiffs pursuant to 42 U.S.C. § 1983.

234.    Defendants Klages, Strampel, Dietzel, Lemmen, Kovan, as well as Nassar, are also liable to Plaintiffs under 42 U.S.C. § 1983 for maintaining customs, policies, and practices

which deprived Plaintiffs of rights secured by the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. § 1983.

235.    Defendants Klages, Strampel, Dietzel, Lemmen, and Kovan tolerated, authorized and/or permitted a custom, policy, practice or procedure of insufficient supervision and failed to adequately screen, counsel, or discipline Nassar, with the result that Nassar was allowed to violate the constitutional rights of persons such as Plaintiff with impunity.

236.    As a direct and proximate result of the MSU Defendants' and Nassar's actions and/or inactions, Plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

237.    In the alternative, the actions or inactions of Defendants Klages, Strampel, Dietzel, Lemmen, and Kovan were so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff and constitutes gross negligence that is the proximate cause of Plaintiff's damages. Plaintiff has suffered and continues to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiff was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## COUNT IV
## FAILURE TO TRAIN AND SUPERVISE, 42 U.S.C. § 1983
## (AGAINST DEFENDANTS KLAGES, STRAMPEL, DEITZEL, AND KOVAN)

238.    Plaintiff incorporates each preceding Paragraph as though fully restated herein.

239.    Defendants Klages, Strampel, Dietzel, and Kovan had, at all times pertinent hereto, the ultimate responsibility and authority to train and supervise their employees, agents, and/or representatives, including Nassar and all faculty and staff, regarding their duties toward students, faculty, staff, and visitors.

240.    Defendants Klages, Strampel, Dietzel, and Kovan failed to train and supervise its employees, agents, and/or representatives, including all faculty and staff, regarding the following duties:

      a.   Perceive, report, and stop inappropriate sexual conduct on campus;

      b.   Provide diligent supervision over student-athletes and other individuals;

      c.   Report suspected incidents of sexual abuse or sexual assault;

      d.   Ensure the safety of all students, faculty, staff, and visitors to Defendant MSU's campuses premises;

      e.   Provide a safe environment for all students, faculty, staff, and visitors to Defendant MSU's premises free from sexual harassment; and,

      f.   Properly train faculty and staff to be aware of their individual responsibility for creating and maintaining a safe environment.

241.    The above list of duties is not exhaustive.

242.    Defendants Klages, Strampel, Dietzel, and Kovan failed to adequately train coaches, trainers, medical staff, and others regarding the aforementioned duties which led to violations of Plaintiff's rights.

243.     As a result, Defendants Klages, Strampel, Dietzel, and Kovan deprived Plaintiff of rights, including those described herein, secured by the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. § 1983.

244.     As a direct and proximate result of Defendants' actions and/or inactions, Plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

245.     In the alternative, the actions or inaction of the Defendants Klages, Strampel, Dietzel, and Kovan were so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff and constitutes gross negligence that is the proximate cause of Plaintiff's damages. Plaintiff has suffered and continues to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiff was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## COUNT V
## GROSS NEGLIGENCE
## (AGAINST THE MSU DEFENDANTS)

246.     Plaintiff incorporates each preceding Paragraph as though fully restated herein.

247.    The MSU Defendants owed Plaintiff a duty of ordinary care to ensure their safety and freedom from sexual assault, abuse, and molestation while interacting with their employees, representatives, and/or agents, including Nassar.

248.    Nassar owed Plaintiff a duty to use ordinary care in providing medical treatment as an employee, agent, and/or representative of the MSU Defendants.

249.    A special, confidential, and fiduciary relationship was created between Plaintiff and Nassar when Plaintiffs sought medical treatment from Nassar in the course of his employment, agency, and/or representation of the MSU Defendants, resulting in Nassar owing Plaintiff a duty to use due care.

250.    A special, confidential, and fiduciary relationship was created and existed at all times pertinent hereto between the MSU Defendants and Nassar, as described herein this Complaint, resulting in the MSU Defendants owing Plaintiffs a duty to use due care.

251.    The MSU Defendants and their employees, agents, and/or representatives had a duty to report suspected sexual abuse.

252.    The MSU Defendants had notice of complaints of a sexual nature related to Nassar's purported treatment with young girls and women through Defendant MSU employees, agents, and/or representatives as early as 1997/1998, again in 1999, again in 2000, again in 2001/2002, again in 2004, and again in 2014, as described herein this Complaint.

253.    The MSU Defendants and their employees, agents, and/or representatives failed to report sexual abuse about which they knew or should have known in 1997/1998, 1999, 2000, 2001/2002, 2004, and 2014, as described herein this Complaint.

254.    The MSU Defendants' failure to adequately train and supervise Nassar, especially after the MSU Defendants knew or should have known of complaints regarding Nassar's

conduct, was so reckless as to demonstrate a substantial lack of concern for whether injury resulted to Plaintiffs.

255.    Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiffs in the course of his employment, agency, and/or representation of the MSU Defendants under the guise of proper medical treatment was so reckless as to demonstrate a substantial lack of concern for whether injury resulted to Plaintiffs.

256.    Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiffs in the course of his employment, agency, and/or representation of the MSU Defendants and under the guise of rendering "medical treatment" was so reckless as to demonstrate a substantial lack of concern for whether injury would result to Plaintiffs.

257.    The MSU Defendants' conduct and the conduct of their individual employees and agents demonstrated a willful disregard for precautions to ensure Plaintiffs' safety.

258.    The MSU Defendants knew or should have known of complaints pertaining to Nassar's nonconsensual sexual touching and assaults that occurred under the guise of medical treatment.

259.    The MSU Defendants' conduct demonstrated a willful disregard for substantial risks to Plaintiff.

260.    The MSU Defendants breached duties owed to Plaintiff and were grossly negligent when they conducted themselves in the manner described herein this Complaint. These acts by the MSU Defendants were committed with reckless disregard to Plaintiff's safety, health, constitutional and/or statutory rights, and with substantial lack of concern to whether injury resulted to Plaintiff.

261.    The MSU Defendants failed to warn or advise current and former patients of

Nassar, including Plaintiff, that allegations could surface that in fact the treatments that the patients received was not medical treatment at all but was potentially sexual assault.

262.    The MSU Defendants failed to offer counseling services to current of former patients of Nassar, including Plaintiff.

263.    As a direct and proximate result of the MSU Defendants' and Nassar's actions and/or inactions, Plaintiff has suffered and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

264.    As a direct and/or proximate result of Defendants' gross negligence, Plaintiff has suffered and continues to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiff was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

### COUNT VI—NEGLIGENCE
### (Against the MSU Defendants)

265.    Plaintiff incorporates each preceding Paragraph as though fully restated herein.

266.    The MSU Defendants owed Plaintiff a duty to use ordinary care to ensure her safety and freedom from sexual assault, abuse, and molestation while interacting with their

employees, agents, and/or representatives, including Nassar.

267.    Nassar owed Plaintiff a duty to use ordinary care in providing medical treatment as an employee, agent, and/or representative of the MSU Defendants.

268.    A special, confidential, and fiduciary relationship was created between Plaintiff and Nassar when Plaintiff sought medical treatment from Nassar in the course of his employment, agency, and/or representation of the MSU Defendants, resulting in Nassar owing Plaintiff a duty to use ordinary care in his undertakings.

269.    A special, confidential, and fiduciary relationship was created and existed at all times pertinent hereto between the MSU Defendants and Nassar, as described herein this Complaint, resulting in the MSU Defendants owing Plaintiff a duty to use ordinary care in their undertakings.

270.    The MSU Defendants and their employees, agents, and/or representatives had a duty to report suspected sexual abuse.

271.    The MSU Defendants had notice of complaints of a sexual nature related to Nassar's purported treatment with young girls and women through Defendant MSU employees, agents, and/or representatives as early as 1997/1998, again in 1999, again in 2000, again in 2001/2002, again in 2004, and again in 2014, as described herein this Complaint.

272.    The MSU Defendants and their employees, agents, and/or representatives failed to report sexual abuse about which they knew or should have known in 1997/1998, 1999, 2000, 2001/2002, 2004, and 2014, as described herein this Complaint.

273.    The MSU Defendants knew or should have known of the foreseeability of sexual abuse with respect to youth and collegiate sports.

274.    The MSU Defendants' failure to properly address, investigate, and remedy

complaints against Nassar's conduct was a breach of the duty to use ordinary care.

275. Nassar's conduct in sexually assaulting, battering, molesting, and harassing Plaintiff in the course of his employment, agency, and/or representation of the MSU Defendants under the guise of proper medical treatment was a breach of the duty to use ordinary care.

276. The MSU Defendants' failure to adequately train and supervise Nassar breached the duty of ordinary care.

277. The MSU Defendants failed to warn or advise current and former patients of Nassar, including Plaintiff, that allegations could surface that in fact the treatments that the patients received was not medical treatment at all but was potentially sexual assault.

278. The MSU Defendants failed to offer counseling services to current of former patients of Nassar, including Plaintiff.

279. As a direct and proximate result of Defendants' actions and/or inactions, Plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

### COUNT VII
### VICARIOUS LIABILITY
### (AGAINST THE MSU DEFENDANTS)

280. Plaintiff incorporates each preceding Paragraph as though fully restated herein.

281. Vicarious liability is indirect responsibility imposed by operation of law where an employer is bound to keep its employees within their proper bounds and is responsible if it fails to do so.

282.    Vicarious liability essentially creates agency between the principal and its agent so that the principal is held to have done what the agent has done.

283.    The MSU Defendants employed and/or held Nassar out to be its employee, agent, and/or representative from approximately 1996 to 2016.

284.    Defendant MSU's website contains hundreds of web pages portraying Nassar as a distinguished member of Defendant MSU's College of Osteopathic Medicine, Division of Sports Medicine.

285.    A special, confidential, and fiduciary relationship was created and existed at all times pertinent hereto between the MSU Defendants and Nassar, as described herein this Complaint, resulting in the MSU Defendants owing Plaintiffs a duty to prevent them from Nassar's sexual assault, battery, molestation, and discrimination.

286.    The MSU Defendants are vicariously liable for the actions of Nassar, as described above, that were performed during the course of his employment, agency, and/or representation with the MSU Defendants and while he had access to young female patients on Defendant MSU's campus and premises through its College of Osteopathic Medicine and Division of Sports Medicine.

287.    The MSU Defendants had actual and/or constructive knowledge of Nassar's propensity for sexually assaulting, battering, molesting, and harassing females on several occasions under the guise of medical treatment and during the course of his employment, agency, and/or representation with the MSU Defendants, beginning in 1997 and/or 1998, as described herein this Complaint.

288.    The MSU Defendants had actual and/or constructive knowledge of Nassar's propensity for sexually assaulting, battering, molesting, and harassing his patients and other

females under the guise of medical treatment and during the course of his employment, agency, and/or representation with the MSU Defendants, and took no action to prevent such conduct.

289.    It was reasonably foreseeable that Nassar would continue to sexually assault, batter, molest, and harass females under the guise of medical treatment during the course of his employment, agency, and/or representation with the MSU Defendants, with the actual and/or constructive knowledge the MSU Defendants had of such conduct.

290.    As a direct and proximate result of Nassar's actions carried out in the course of his employment, agency, and/or representation of the MSU Defendants, Plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

## COUNT VIII
## EXPRESS/IMPLIED AGENCY
## (AGAINST MSU DEFENDANTS)

291.    Plaintiff incorporates each preceding Paragraph as though fully restated herein.

292.    An agent is a person who is authorized by another to act on its behalf.

293.    The MSU Defendants intentionally and/or negligently made representations that Nassar was their employee, agent, and/or representative.

294.    On the basis of those representations, Plaintiff reasonably believed that Nassar was acting as an employee, agent, and/or representative of the MSU Defendants.

295.    Plaintiff was injured as a result of Nassar's sexual assault, abuse, and molestation, as described above. These acts were performed during the course of Nassar's employment,

agency, and/or representation with the MSU Defendants while he had access to young females.

296.   Plaintiff was injured because she relied on the MSU Defendants to provide employees, agents, and representatives who exercise reasonable skill and care.

297.   As a direct and proximate result of Nassar's actions carried out in the course of his employment, agency, and/or representations of the MSU Defendants, Plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

298.   In the alternative, the actions or inactions of the MSU Defendants were so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff and constitutes gross negligence that is the proximate cause of Plaintiff's damages. Plaintiff has suffered and continues to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiff was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## COUNT IX
## NEGLIGENT SUPERVISION
## (AGAINST MSU DEFENDANTS)

299.    Plaintiff incorporates each preceding Paragraph as though fully restated herein.

300.    The MSU Defendants had a duty to provide reasonable supervision of their employee, agent, and/or representative, Nassar, while he was in the course of his employment, agency, and/or representation with the MSU Defendants and while he interacted with young females, including Plaintiff.

301.    Given the known sexual abuse in youth sports and gymnastics, it was reasonably foreseeable that Nassar, who had prior allegations against him, had and/or would sexually abuse young females, including Plaintiff, unless properly supervised.

302.    The MSU Defendants, by and through their employees, agents, representatives, managers, and/or assigns, such as Kathie Klages, President Simon, President McPherson, Dean Strampel, or Dr. Kovan, knew or reasonably should have known of Nassar's conduct and/or that Nassar was an unfit employee, agent, and/or representative because of his sexual interest in children.

303.    The MSU Defendants breached their duty to provide reasonable supervision of Nassar, and permitted Nassar, who was in a position of trust and authority, to commit acts against Plaintiff.

304.    The aforementioned sexual assault, abuse, and molestation occurred while Plaintiff and Nassar were on the premises of Defendant MSU and while Nassar was in the course of his employment, agency, and/or representation with the MSU Defendants.

305.    The MSU Defendants tolerated, authorized, and/or permitted a custom, policy, practice, or procedure of insufficient supervision and failed to adequately screen, counsel, or

discipline such individuals, resulting in the allowance of Nassar to violate the rights of persons such as Plaintiff with impunity.

306.    The MSU Defendants failed to warn or advise current and former patients of Nassar, including Plaintiff, that allegations could surface that in fact the treatments that the patients received was not medical treatment at all but was potentially sexual assault.

307.    The MSU Defendants failed to offer counseling services to current of former patients of Nassar, including Plaintiff.

308.    As a direct and proximate result of the MSU Defendants' failure to adequately supervise, Plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

309.    In the alternative, the MSU Defendants' failure to supervise was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff and constitutes gross negligence that is the proximate cause of Plaintiff's damages. Plaintiff has suffered and continues to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiff was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning

capacity.

## COUNT X
## NEGLIGENT FAILURE TO WARN OR PROTECT
### (AGAINST THE MSU DEFENDANTS)

310.    Plaintiff incorporates each preceding Paragraph as though fully restated herein.

311.    The MSU Defendants knew or should have known that Nassar posed a risk of harm to Plaintiff and/or others in Plaintiff's situation.

312.    The MSU Defendants knew or should have known that Nassar committed sexual assault, abuse, and molestation and/or was continuing to engage in such conduct.

313.    As early as 1997 and/or 1998, the MSU Defendants had direct and/or constructive knowledge of Nassar's dangerous conduct and failed to respond reasonably and responsibly.

314.    The MSU Defendants had a duty to warn or protect Plaintiff and others in Plaintiff's situation against the risk of injury by Nassar.

315.    The special, trusting, confidential, and fiduciary relationship between the MSU Defendants and Nassar, as an employee, agent, and/or representative of the MSU Defendants, created a duty for the MSU Defendants to disclose information regarding Nassar's sexual conduct.

316.    The MSU Defendants breached the duty owed to Plaintiff by failing to warn Plaintiff and/or by failing to take reasonable steps to protect Plaintiff from Nassar.

317.    The MSU Defendants breached the duties to protect owed to Plaintiff by failing to:

       a.    Respond to allegations of sexual assault, abuse, and molestation;

       b.    Detect and/or uncover evidence of sexual assault, abuse, and molestation; and

       c.    Investigate, adjudicate, and terminate Nassar's employment with Defendant MSU

prior to 2016.

318.    The MSU Defendants violated Plaintiffs' rights by failing to adequately screen, counsel, and/or discipline Nassar for physical and/or mental conditions that might have rendered him unfit to discharge the duties and responsibilities of a physician at an educational institution, resulting in a violation of Plaintiff's rights.

319.    The MSU Defendants willfully refused to notify, give adequate warning, and implement appropriate safeguards to protect Plaintiff from Nassar's conduct.

320.    As a direct and proximate result of the MSU Defendants' failure to warn or protect, Plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

321.    In the alternative, the MSU Defendants' failure to warn or protect was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff and constitutes gross negligence that is the proximate cause of Plaintiff's damages.

322.    Plaintiff has suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries.

323.    Plaintiff was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life, and has sustained and

continues to sustain loss of earnings and earning capacity.

**COUNT XI**
**NEGLIGENT FAILURE TO TRAIN OR EDUCATE**
**(AGAINST THE MSU DEFENDANTS)**

324.    Plaintiff incorporates each preceding Paragraph as though fully restated herein.

325.    The MSU Defendants had a duty to take reasonable protective measures to protect Plaintiff and others in Plaintiff's situation against the risk of injury by Nassar, including the duty to train or educate Plaintiff and other individuals in Plaintiff's situation, about how to avoid a risk of sexual assault and/or sexual abuse by Nassar.

326.    The MSU Defendants breached the duty owed to Plaintiff to take reasonable protective measures to protect Plaintiff, and other patients of Nassar, by failing to properly train or educate Plaintiff and other individuals in Plaintiff's situation, about how to avoid a risk of sexual assault and/or sexual abuse by Nassar.

327.    The MSU Defendants had a duty to train and educate Nassar in a reasonable manner in regards to Nassar's treatment of females in his capacity as an employee, agent, and/or representative of the MSU Defendants.

328.    The MSU Defendants breached the duty owed to Plaintiff by failing to properly train or educate Nassar in a reasonable manner in regards to Nassar's treatment of females in his capacity as an employee, agent, and/or representative of the MSU Defendants.

329.    The MSU Defendants failed to implement reasonable safeguards to:

    a.    Prevent acts of sexual assault, abuse, and molestation by Nassar; and

    b.    Avoid placing Nassar in positions where he would have unsupervised contact and interaction with Plaintiff and other young women.

330.    As a direct and proximate result of the MSU Defendants' failure to train or

educate, Plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

331. In the alternative, the MSU Defendants' failure to train or educate was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff and constitutes gross negligence that is the proximate cause of Plaintiff's damages. Plaintiff has suffered and continues to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiff was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## COUNT XII
## NEGLIGENT RETENTION
## (AGAINST THE MSU DEFENDANTS)

332. Plaintiff incorporates each preceding Paragraph as though fully restated herein.

333. The MSU Defendants owed a duty to Plaintiff and others in Plaintiff's situation when credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising employees, agents, and/or representatives to exercise ordinary care.

334. The MSU Defendants breached the duties owed to Plaintiff by failing to

adequately investigate, report, and address complaints about Nassar's conduct, which the MSU Defendants knew or should have known.

335.    The MSU Defendants breached the duties owed to Plaintiff when the MSU Defendants retained Nassar as an employee, agent, and/or representative after the MSU Defendants discovered or should have reasonably discovered Nassar's conduct, which reflected a propensity for sexual misconduct.

336.    The MSU Defendants' failure to act in accordance with the standard of care resulted in Nassar gaining access to and sexually assaulting and/or sexually abusing Plaintiff and an unknown number of other individuals.

337.    The aforementioned conduct of the MSU Defendants in credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising of Nassar created a foreseeable risk of harm to Plaintiff and other minors and young adults.

338.    As a direct and proximate result of the MSU Defendants' actions in retaining Nassar, Plaintiff have suffered and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

339.    In the alternative, the MSU Defendants' actions in retaining Nassar were so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff and constitutes gross negligence that is the proximate cause of Plaintiff's damages. Plaintiff has suffered and continues to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-

esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiff was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

**COUNT XIII**
**FRAUD AND MISREPRESENTATION**
**(AGAINST THE MSU DEFENDANTS)**

340.    Plaintiff incorporates each preceding Paragraph as though fully restated herein.

341.    From approximately 1996 to September 2016, the MSU Defendants represented to Plaintiff and the public that Nassar was a competent, safe, and highly regarded physician.

342.    By representing that Nassar was a team physician and an athletic physician at Defendant MSU and a National Team Physician with Defendant USAG, the MSU Defendants represented to Plaintiff and the public that Nassar was safe, trustworthy, and of high moral and ethical repute and that Plaintiffs and the public need not worry about being harmed by Nassar.

343.    The aforementioned representations were false when they were made because Nassar had and was continuing to sexually assault, abuse, and molest an unknown number of patients, including Plaintiff, and other individuals.

344.    The MSU Defendants knew the aforementioned representations regarding Nassar were false because there had been previous complaints in 1997/1998, 1999, 2000, 2001/2002, 2004, and 2014 to Defendant MSU employees, agents, and/or representatives about Nassar's sexual assault, battery, molestation, and harassment.

345.    Although Defendant MSU had been informed of Nassar's conduct, the MSU

Defendants failed to investigate, remedy, or in any way address the 1997/1998, 1999, 2000, 2001/2002, 2004, and 2014 complaints against Nassar.

346.    The MSU Defendants continued to portray Nassar as a competent and safe physician.

347.    Plaintiff relied on the MSU Defendants' portrayal of Nassar when they sought his medical treatment for their injuries.

348.    Plaintiff and other members of the public relied on the assertions of the MSU Defendants and several other young females continued to seek medical treatment from Nassar in the wake of known concerns and dangers.

349.    Nassar was permitted to continue employment and sexually assault, abuse, and molest an unknown number of other individuals, despite Amanda Thomashow's 2014 complaint against Nassar to Kristine M. Moore, Assistant Director for Institutional Equity at the MSU Office for Inclusion and Intercultural Initiatives.

350.    The MSU Defendants disregarded Amanda Thomashow's 2014 complaint because of Defendant MSU's culture which included existence of a sexually hostile environment on Defendant MSU's campus and premises and the University's failure to address complaints of sexual harassment, including sexual violence in a prompt and equitable manner which in turn caused and may have contributed to a continuation of the sexually hostile environment, Nassar was permitted to continue employment and sexually abuse, assault, and molest an unknown number of other individuals.

351.    The MSU Defendants intentionally withheld material opinions, findings, evidence, and conclusions from Amanda Thomahow and other Nassar victims in regards to the findings of Amanda Thomashow's Title IX investigation conducted in 2014, as described herein

this Complaint.

352.    Between the time of Amanda Thomashow's 2014 complaint and 2016, the MSU Defendants continued to portray Nassar as a safe and competent physician.

353.    The MSU Defendants, by and through their representatives, also affirmatively took steps to attempt to dissuade Amanda Thomashow from speaking with police about her complaints against Nassar.

354.    The MSU Defendants, by and through their representatives, also affirmatively took steps to attempt to dissuade other potential victims of Nassar from speaking with police or the media by advising the potential victims to respond "No comment" to any requests by media or police.

355.    These actions of MSU Defendants, including the disregard of Amanda Thomashow's complaints, were purportedly done as an attempt to hide the known instances of sexual abuse committed by Nassar.

356.    As a result of Plaintiff's and the public's reliance on the MSU Defendants' fraudulent misrepresentations regarding Nassar, Plaintiff and others in Plaintiff's situation were sexually assaulted, abused, and molested by Nassar during appointments.

357.    As a direct and proximate result of the MSU Defendants' actions and knowingly false representations, Plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

**COUNT XIV**
**MICHIGAN CHILD PROTECTION LAW—FAILURE TO REPORT CHILD ABUSE**
**(AGAINST DEFENDANTS KLAGES, STRAMPEL, KOVAN, AND STOLLAK)**

358.   Plaintiff incorporates each preceding Paragraph as though fully restated herein.

359.   Michigan's Child Protection Law, MCL 722.621 *et seq.*, establishes mandatory reporting guidelines for suspected child abuse or neglect and provides penalties for failure to report child abuse or neglect.

360.   Specifically, MCL 722.623 provides in pertinent part:

A physician, dentist, physician's assistant, registered dental hygienist, medical examiner, nurse, person licensed to provide emergency medical care, audiologist, psychologist, marriage and family therapist, licensed professional counselor, social worker, licensed master's social worker, licensed bachelor's social worker, registered social service technician, social service technician, a person employed in a professional capacity in any office of the friend of the court, school administrator, school counselor or teacher, law enforcement officer, member of the clergy, or regulated child care provider who has reasonable cause to suspect child abuse or child neglect shall make an immediate report to centralized intake by telephone, or, if available, through the online reporting system, of the suspected child abuse or child neglect.

361.   Child abuse is defined as "harm or threatened harm to a child's health or welfare that occurs through nonaccidental physical or mental injury, sexual abuse, sexual exploitation, or maltreatment, by a parent, a legal guardian, or any other person responsible for the child's health or welfare or by a teacher, a teacher's aide, or a member of the clergy." MCL 722.622(g).

362.   Child neglect is defined as "harm or threatened harm to a child's health or welfare by a by a parent, a legal guardian, or any other person responsible for the child's health or welfare that occurs through either of the following: (i) Negligent treatment, including the failure to provide adequate food, clothing, shelter, or medical care. (ii) Placing a child at an unreasonable risk to the child's health or welfare by failure of the parent, legal guardian, or any other person responsible for the child's health or welfare to intervene to eliminate that risk when

that person is able to do so and has, or should have, knowledge of the risk." MCL 722.622(k).

363.    Under MCL 722.633(1), "A person who is required by this act to report an instance of suspected child abuse or neglect and who fails to do so is civilly liable for the damages proximately caused by the failure."

364.    Defendants Klages, Strampel, Kovan, and Stollak were mandatory reporters during the time Nassar was engaged in child abuse or child neglect.

365.    As established in the allegations above, Defendants Klages, Strampel, Kovan, and Stollak had reasonable cause to suspect child abuse or child neglect.

366.    Defendant Klages, Strampel, Kovan, and Stollak failed to report any instances of suspected child abuse or neglect.

367.    Defendants Klages, Strampel, Kovan, and Stollak are or were employed by Defendants Michigan State University and Michigan State University Board of Trustees during the time Nassar was engaged in child abuse or child neglect, and were acting in the scope and course of their employment when they failed to report any instances of suspected child abuse or neglect.

368.    Defendants Klages, Strampel, Kovan, and Stollak are directly civilly liable for the damages proximately caused by their failure to report any instances of suspected child abuse or neglect. Defendants Michigan State University and Michigan State University Board of Trustees are vicariously liable for said damages.

369.    As a direct and proximate result of Nassar's sexual molestation, assault and battery, and invasion of Plaintiff's privacy, Plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of

life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

### DAMAGES—FOR ALL AFOREMENTIONED CAUSES OF ACTION

370.    Plaintiff incorporates each preceding Paragraph as though fully restated herein.

371.    As a direct and/or proximate result of Defendants' actions and/or inactions stated above, Plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

372.    The conduct, actions and/or inactions of Defendants as alleged in the above stated counts and causes of action constitute violations of Plaintiff's constitutional and federal rights as well as the common and/or statutory laws of the State of Michigan, and the United States District Court has jurisdiction to hear and adjudicate said claims.

373.    In whole or in part, as a result of some or all of the above actions and/or inactions of Defendants, Plaintiff has suffered and continues to suffer irreparable harm as a result of the violations.

374.    The amount in controversy is well in excess of $75,000.00.

WHEREFORE, Plaintiff requests this Court and the finder of fact to enter a Judgment in Plaintiff's favor against all named Defendants on all counts and claims as indicated above in an amount consistent with the proofs of trial, and seek against Defendants all appropriate damages arising out of law, equity, and fact for each or all of the above counts where applicable and

hereby request that the trier of fact, be it judge or jury, award Plaintiff all applicable damages, including but not limited to compensatory, special, exemplary, and/or punitive damages, in whatever amount the Plaintiff is entitled, and all other relief arising out of law, equity, and fact, also including but not limited to:

    a.  Compensatory damages in an amount to be determined as fair and just under the circumstances, by the trier of fact including, but not limited to medical expenses, loss of earnings, mental anguish, anxiety, humiliation, and embarrassment, violation of Plaintiff's constitutional, federal, and state rights, loss of social pleasure and enjoyment, and other damages to be proved;

    b.  Punitive and/or exemplary damages in an amount to be determined as reasonable or just by the trier of fact;

    c.  Reasonable attorney fees, interest, and costs; and

    d.  Other declaratory, equitable, and/or injunctive relief, including, but not limited to implementation of institutional reform and measures of accountability to ensure the safety and protection of young athletes and other individuals, as appears to be reasonable and just.

Respectfully submitted,

***Giroux Amburn PC***

Dated: April 23, 2018

/s/ Robert M. Giroux
Robert M. Giroux (P47966)
Matthew D. Klakulak (P60220)
Attorneys for Plaintiff
28588 Northwestern Highway, Suite 100
Southfield, Michigan 48034
(248) 531-8665
r.giroux@girouxamburn.com
m.klakulak@girouxamburn.com

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of the matters alleged herein.

Respectfully submitted,

***Giroux Amburn PC***

Dated: April 23, 2018                /s/ Robert M. Giroux
_____
Robert M. Giroux (P47966)
Matthew D. Klakulak (P60220)
Attorneys for Plaintiff
28588 Northwestern Highway, Suite 100
Southfield, Michigan 48034
(248) 531-8665
r.giroux@girouxamburn.com
m.klakulak@girouxamburn.com